UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA  : | | |
| | : | CRIMINAL NO. |
| v. | : | 3:04-cr-138 (JCH) |
| | : | |
| ROBERT THOMAS, | : | FEBRUARY 16, 2006 |
|     Defendant. | : | |

**RULING ON MOTION FOR ACQUITTAL OR A NEW TRIAL [Dkt. No. 1519]**

**I.  INTRODUCTION**

Defendant Robert Thomas was indicted in April 2004 and charged with being a member of a 49-person conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and § 846. [Dkt. No. 7].  He was convicted following a jury trial.  The jury determined the drug quantity attributable to Thomas to be five grams or more, but less than fifty grams, of cocaine base.  Thomas thereafter filed a motion for acquittal pursuant to Rule 29, Fed.R.Civ.P., and for a new trial pursuant to Rule 33. [Dkt. No. 1519].

These combined motions assert that:  (1) the government adduced insufficient evidence to support Thomas's conviction for being a member of the charged conspiracy; (2) if the government adduced sufficient evidence to prove a conspiracy, it proved a different conspiracy from that charged in the indictment, creating a variance of proof that prejudiced the defendant; (3) the aforementioned prejudice was "exacerbated by the Court's infringement on the defendant's Constitutional rights to give an adequate closing argument" by refusing to allow counsel to use certain demonstrative exhibits in that argument; and (4) the jury's finding that Thomas's offense involved a lesser

1

quantity of cocaine base than that charged in the indictment renders his conviction invalid, because drug quantity is an element of the charged offense and neither party sought a lesser-included offense charge.

## II. STANDARDS OF REVIEW

### A.    Motion for Acquittal

Rule 29 of the Federal Rules of Criminal Procedure allows a district court to enter a judgment of acquittal on a motion made within 7 days after a guilty verdict where the evidence presented at trial was insufficient to sustain a conviction.  See Fed.R.Civ.P. 29(a) & (c).  " A defendant who challenges the sufficiency of the evidence to support his conviction bears a heavy burden."  United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (internal citation and quotation marks omitted).  In deciding such a motion, the court must "view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor."  United State v. Tubol, 191 F.3d 88, 97 (2d Cir. 1999).  In addition, the court must view the evidence "not in isolation but in conjunction."  Id.   The court must resolve all issues of credibility in favor of the jury's verdict.  See United States v. Chang An-Lo, 851 F.2d 547, 554 (2d Cir. 1988).  "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  Jackson, 335 F.3d at 180.  "In other words, a court may grant a judgment of acquittal only if the evidence that the defendant committed the crime alleged was nonexistent or . . . meager."  Id. (internal citation and quotation

marks omitted).

**B.    Motion for New Trial**

In the alternative, the defendant seeks a new trial pursuant to Rule 33.  "The rule by its terms gives the trial court 'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'"  United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)).  "The 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice. . . . There must be a real concern that an innocent person may have been convicted.'"  United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (quoting Ferguson, 246 F.3d at 134).  "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances."  Ferguson, 246 F.3d at 134  (internal quotation marks and citations omitted).

"In considering whether to grant a new trial, a district court may itself weigh the evidence and the credibility of witnesses, but in doing so, it must be careful not to usurp the role of the jury."  Canova, 412 F.3d at 348 -49.  The court must generally "defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses," intruding on those functions only when exceptional circumstances exist.  Id. at 1414. The jury's determination of guilt must stand if "competent, satisfactory and sufficient evidence" exists in the record to support the jury's finding of guilt.  Id.

3

## III.  DISCUSSION

### A. Prejudicial Variance and Insufficient Evidence of Single Conspiracy

Thomas's arguments regarding proof of multiple conspiracies are founded on both prejudicial variance and insufficient evidence.  With regard generally to the first ground, "a conviction will be reversed [on grounds of impermissible variance between the conspiracy charged in the indictment and the proof adduced at trial] where the defendant can show that (1) the indictment charged a single conspiracy, but the proof disclosed several independent conspiracies, and (2) defendant was so prejudiced by this variance as to be denied a fair trial."  United States v. Desimone, 119 F.3d 217, 226 (2d Cir. 1997) (internal citations omitted).

"Whether the government has proved a single conspiracy or multiple conspiracies is a question of fact for a properly instructed jury."  United States v. Williams, 205 F.3d 23, 32 (2d Cir. 2000).  "A single conspiracy may be found where there is mutual dependence among the participants, a common aim or purpose or a permissible inference from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture."  Williams, 205 F.3d at 33.  An agreement to form a conspiracy may be proven by circumstantial evidence, "provided such evidence establishes beyond a reasonable doubt the defendants' knowledge of 'the essential nature of the plan and their connections with it.'" United States v. Downing, 297 F.3d 52 (2d Cir. 2002) (quoting Blumenthal v. United States, 332 U.S. 539, 557 (1947)).  "The government need not prove that the defendants knew the details of the conspiratorial

scheme or the identities of all of the conspirators." Id.  Similarly, "the mere fact that

certain members of the conspiracy deal recurrently with only one or two others does not

exclude a finding that they were bound together in one conspiracy." United States v.

Agueci, 310 F.2d 817 (2d Cir. 1962).  However, the evidence would have to be

sufficient to support a finding that the defendant "knew or had reason to know" that

other individuals were involved in the narcotics distribution organization and that he

"had reason to believe that [his] own benefits derived from the operation were probably

dependent upon the success of the entire venture."  United States v. Sureff, 15 F.3d

225, 230 (2d Cir. 1994) (internal quotation marks and citations omitted).

> To determine whether the proof supports a finding of a single or multiple
> conspiracies, we first examine the scope of the proven criminal
> enterprises to determine whether any of them fits the pattern of the
> conspiracy alleged in the indictment.  We then assess whether the jury
> could reasonably infer from defendant's conduct that he knowingly
> took part in the alleged criminal enterprise. In other words, we conduct an
> inquiry substantially similar to that required to evaluate [a] claim of
> insufficiency of the evidence.

Desimone, 119 F.3d at 226 (internal citations omitted).  Therefore, it is appropriate to

consider the first two of Thomas's claims, as they are stated in the written motion,

together.

The defendant argues that the conspiracy proven at trial was a "spoke" or

"wheel" conspiracy, because the many street-level dealers dealt only with the four

principal conspirators and not with each other.  See Def.'s Mot., Ex. G [Dkt. No. 1520].

He argues that this type of conspiracy is really composed of multiple separate

conspiracies.  Although his motion primarily alleges prejudicial variance and insufficient

evidence, he also suggests in his September 12 memorandum that the court's jury

charge concerning multiple conspiracies failed sufficiently to distinguish between "chain" and "wheel" conspiracies.[1]

In the 1947 case <u>Kotteakos v. United States</u>, the Supreme Court held that a jury "could not possibly have found, upon the evidence, that there was only one conspiracy" among multiple individuals engaged in housing loan fraud, where the charged conspiracy took the form of a wheel with spokes but no rim.  <u>See</u> 328 U.S. 750, 755. The <u>Kotteakos</u> court further found that variance between the charged and proved conspiracies prejudiced the defendant.  <u>See</u> <u>id.</u> at 768-772.  <u>Kotteakos</u> has not been overruled, and the principals behind it remain intact.  The Second Circuit cases cited above are consistent with the idea that the mere fact that multiple people have engaged in criminal conspiracies with the same central individual is not sufficient to prove that they are all members of a single conspiracy, even when all of the activities involve crimes of similar character.  However, the Second Circuit does not apply <u>Kotteakos</u> as a <u>per se</u> rule prohibiting a finding of a single conspiracy when the conspiracy would be drawn as a wheel without direct evidence of a rim.  Rather, it considers whether the

---

[1] The charge stated in pertinent part,

> Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy charged in the indictment.

> . . . [I]f you find that the conspiracy charged in the indictment does not exist, you cannot find the defendant guilty of the single conspiracy charged in the indictment.  This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.

Jury Charge at 43-44.

6

evidence in a particular case supports a finding that a defendant had the requisite knowledge to be considered a member of a particular conspiracy.  The Second Circuit has found that one conspiracy in which two "spokes" of a wheel did not know each other could nevertheless have been a single conspiracy where the two "spokes" had reason to know that in dealing with the central figure they were dealing with a larger organization.  Sureff, 15 F.3d.  On the other hand, it has found that a "wheel conspiracy" should have been understood as multiple conspiracies where evidence did not support an inference that certain defendants would have been aware of and shared a common goal with others allegedly in the same conspiracy.  E.g., United States v. Miley, 513 F.2d 1191, 1206-07 (2d Cir. 1975) (citing United States v. Borelli, 336 F.2d 376 (2d Cir. 1964) (small scope of operation, finding variance but insufficient prejudice to reverse); United States v. Johansen, 56 F.3d 347, 351 (2d Cir. 1995) ("The government offered not a whit of evidence that Johansen was aware of the existence of Ferrante and Degel, that they shared a common goal, or that Johansen knew that Barwick was processing [fraudulent credit] cards for persons other than himself.").  It has also noted that drug conspiracies differ from the conspiracy at issue in Kotteakos insofar as they are commonly known to require many people.  United States v. Rich, 262 F.2d 415 (2d Cir. 1959).  Each case must be decided on an individual basis, in light of the specific evidence presented at trial.

In light of the foregoing authorities, the court finds that it was not required to charge the jury on the issue of "spoke" versus "chain" conspiracies, particularly where it instructed the jury generally on the necessary elements of the charged conspiracy and the necessity of determining solely whether or not the government had proven the

particular conspiracy charged in the indictment.  Moreover, applying the Rule 33 and Rule 29 standards, the court finds that sufficient evidence was presented from which a rational trier of fact could have concluded, applying the controlling legal standards, that the government proved the charged single conspiracy beyond a reasonable doubt.  As discussed in its Supplemental Memorandum of November 22, 2005 [Dkt. No. 1670], the government presented evidence from which the jury could have concluded that Thomas had the required knowledge of the scope of the Moorning organization, even though it did not prove that he knew the identity of all of the street level dealers.

Edward Hines, Jr., Julius Moorning's lieutenant and one of the four central figures in the charged conspiracy, testified that he sold crack to Thomas five or six times during the time period covered by the indictment, Transcript of Hines' Testimony at 82 [hereinafter "Hines Tr."] [Dkt. No. 1422], and that Thomas also purchased crack from the other core members of the organization:  Moorning, Michelle Groom, and Rodney Nelson, id. at 109-114.  Hines identified several surveillance tapes as calls Thomas placed to Hines and other principals, apparently to arrange meetings in which he could purchase crack from them, as well as a call in which Hines and Nelson discussed selling crack to Thomas.  Id. at 109-14; see Ex. TT 21; TT 22; TT 26; TT 27; TT 28; TT 29.  Hines testified that, at least on one occasion, Thomas called to request a sale and then had to wait while the principals were busy serving other street-level dealers.  Hines Tr. at 110; see Ex. TT 21.  If the jury credited this evidence, it could reasonably have inferred that Thomas knew the organization was large enough to require four core members to field purchase requests from street-level dealers, and that the core members were busy serving multiple street-level dealers.

8

Hines further indicated that he had seen Thomas hanging out with at least five[2] other street-level dealers who purchased drugs from Hines and the other Moorning principals and that Thomas and the other street-level dealers would come up to Hines' car to buy crack from him.  Hines Tr. at 83-84 [Dkt. No. 1422].   Hines further testified that he once saw Thomas selling crack to a user after Thomas had called Hines with a request to buy some crack from him and that Hines chastised Thomas for exposing him to individuals to whom Thomas was selling crack, id. at 85-86, although Hines would have served him in the presence of other street-level dealers in the organization.  From this evidence, along with the evidence discussed above, the jury could have inferred that Thomas knew there were others at his level in the organization who shared the goal of profiting from its crack distribution activities, and that he knew the organization included street-level dealers but not individuals who bought crack from the street-level dealers.

Hines also testified that Thomas wanted the crack he purchased left in a whole half-ounce piece, and that Thomas told him this was because when he was preparing "dime bags" and "20s" of crack, he could get a better cut with the razor starting with a solid piece than with the smaller "eight balls" of crack.  Hines Tr. at 84.   From this testimony, a jury could reasonably infer that Thomas was reselling the crack that he purchased from the Moorning organization.  Such facts could imply a common goal of profiting from the distribution of crack.

Hines' testimony that he fronted Thomas a half-ounce of crack on one occasion,

---

[2]This includes three dealers whom Hines mentioned by their street names, and "a few other people we serve." Hines Tr. at 83.

rather than requiring payment up front, see Hines Tr. at 114, viewed alongside the evidence above, might also permit a jury to infer that Thomas was closely enough involved in the organization to appreciate its scope.

Thus, a rational fact-finder could have found beyond a reasonable doubt and without manifest injustice that Thomas, like the two peripheral members of the conspiracy in Sureff, "had reason to know that other retailers were involved in a broad project for the . . . distribution and retail sale of narcotics and had reason to believe that [his] own benefits derived from the operation were probably dependent upon the success of the entire venture," 15 F.3d at 230, even if he did not know the identities of all the street-level dealers, see id.  For purposes of the motion for a new trial, the court does not find any exceptional circumstances that would suggest that Hines' testimony was obviously not credible.  It therefore finds sufficient evidence of a single conspiracy and does not find variance between the charge in the indictment and the proof adduced at trial for purposes of the present motions.

Even if the evidence presented at trial had established proof of conspiracies different from that charged in the indictment, Thomas has not shown the "substantial prejudice" that the Second Circuit requires to overturn a conviction for prejudicial variance.   Substantial variance is a showing "that the evidence proving the conspiracies in which the defendant did not participate prejudiced the case against him in the conspiracy to which he was a party."  Johansen, 56 F.3d at 351.  "In evaluating substantial prejudice in this context, the essential question is whether the jury convicted the defendant on evidence unrelated to his own alleged activity."  United States v. Geibel, 369 F.3d 682, 693 (2d Cir. 2004) (internal citation and quotation marks omitted).

The court considers the following factors with respect to prejudice:

> (1) whether the trial court gave a jury charge, pursuant to <u>Pinkerton v. United States</u>, 328 U.S. 640, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946), allowing the defendant to be convicted for substantive offenses committed by another; (2) whether statements of persons not in a conspiracy with the defendant were used against him; (3) whether there was a prejudicial "spillover" because of a large number of improperly joined defendants; and (4) whether shocking or inflammatory evidence came in against the defendant.

<u>Johansen</u>,  56 F.3d at 351 (internal citations omitted); <u>see</u> <u>Geibel</u>, 369 F.3d at 693.

> A defendant cannot demonstrate that he has been prejudiced by a variance where the pleading and the proof 'substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense."

<u>United States v. Salmonese</u>, 352 F.3d 608, 621-22 (2003).

Turning first to the <u>Johansen</u> factors, the court gave no <u>Pinkerton</u> charge. Thomas was charged solely with conspiracy and not with any additional, substantive offense.

With regard to the second factor, the jury was presented with some surveillance testimony involving drug purchases by other street-level dealers.  However, this testimony would have been admissible even if Thomas had been tried for a five-person conspiracy, because all of the surveillance tapes that were admitted involved narcotics sales or related dealings and conversations by Moorning, Hines, Nelson or Groom. "It is axiomatic that all acts and statements committed by one co-conspirator in furtherance of the conspiracy are admissible against all members of the conspiracy." <u>Geibel</u>, 369 F.3d at 625 (internal citation omitted); <u>see</u> Jury Charge at 54.

 Third, Thomas was tried alone, so no prejudicial "spillover" occurred, as that

11

term was used in <u>Johansen</u>.  <u>See</u> 56 F.3d 347, 351 (finding no prejudicial "spillover" because "only four defendants were tried together").

Finally, the court admitted no shocking or inflammatory evidence against the defendant.  Hines did testify regarding the day-to-day operations of the conspiracy's four leaders, including the manner in which Moorning got his supplies from New York and the quantity the principals distributed each week to the street-level dealers.  However, such testimony was not unduly prejudicial, and it would have been admissible even if the conspiracy being proved was limited to Moorning, Hines, Nelson, Groom and Thomas, because they involved actions of these co-conspirators in furtherance of the conspiracy.

Thomas further argues that he was prejudiced by evidence of drug seizures from other street-level dealers who purchased drugs from the Moorning principals.  However, such evidence might have been admitted even in a trial on a five-person conspiracy charge.  In concert with the surveillance testimony, it could constitute circumstantial evidence of reasonably foreseeable acts of Moorning, Hines, Nelson, and Groom in furtherance of the common purpose of the conspiracy.  Even if it would not have been offered and admitted in a five-person conspiracy case, the court does not find it was "shocking" or "inflammatory."

Turning to the rule stated in <u>Salmonese</u>, the court has already found that the pleading and proof substantially correspond.  Thomas does not argue that variance was so pronounced that he lacked adequate notice of the charge against him.  Any variance could not have misled him at trial, nor was it of a character that would deprive him of his right to be protected against double jeopardy.  The acts of which the government

12

produced proof at trial were consistent with those referenced in the indictment.  The court does not find prejudicial variance for purposes of the present motions.

### B.  Possible Sixth Amendment Claim

Thomas also briefly alleges that the court's failure to allow his counsel to use certain demonstrative exhibits in his closing statement violated Thomas's Sixth Amendment right to counsel.  See Def.'s Mem. Supp. Mot. J. Acquittal or New Trial at 15 [Dkt. No. 1520].  The court ruled that defense counsel could not use an exhibit depicting one wheel with spokes that were connected by an outer rim, and another lacking an outer rim, as well as three other demonstrative exhibits.  Trial Tr., 6/24/05, at 425-431 [Dkt. No. 1564].  After viewing them, the court found that the demonstrative exhibits presented a risk of confusing the jury with respect to the law and the trial record and that they would not be helpful to the jury.  It did not limit the oral arguments that defense counsel could make in his summation on the issue of single versus multiple conspiracies.  It certainly did not deny Thomas the opportunity to make a closing argument, which was the action the Supreme Court found to violate the Sixth Amendment in the sole case cited in Thomas's memorandum on the issue of the right to counsel.  See Herring v. New York, 422 U.S. 853, 859 (1975), cited in Def.'s Mem. Supp. Mot. J. Acquittal or New Trial at 15 [Dkt. No. 1520].  The court finds no support for Thomas's contention that the court's refusal to allow use of certain demonstrative exhibits violated his Sixth Amendment right to counsel.

### C. Drug Quantity

Thomas next argues that his conviction for an offense involving a lesser drug

quantity than that charged in the indictment was a conviction for a crime with which he had not been charged.   The Second Circuit has recently held that drug quantity is an essential element of an aggravated narcotics charge under section 841(b)(1)(A) or 841(b)(1)(B).  United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005).[3]

The indictment in the present case charged Mr. Thomas with a violation of section 841(b)(1)(A) (over 50 grams).  Under Rule 31(c)(1) of the Federal Rules of Criminal Procedure, a jury may convict a defendant of "an offense necessarily included in the offense charged," which would include a conviction for the same crime involving a lesser quantity.  See generally Schmuck v. United States, 489 U.S. 705 (1989) (holding that "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense.").  Rule 31 contains no requirement that either party request a particular "lesser included offense" charge, see Def.'s Mot. for J. of Acquittal or New Trial [Dkt. No. 1519], in order for a conviction on a lesser included offense to be proper.  Moreover, the court in this case did charge the jury that the government had to prove quantity beyond a reasonable doubt, just as it had to prove any of the other offense elements.   Jury Charge at 57.  Although the jury did not find the quantity necessary to convict Thomas under 21 U.S.C. § 841(b)(1)(A)(iii), it did find the quantity necessary to convict him under subsection (b)(1)(B)(iii) of the same statute.  Thomas does not challenge the sufficiency of the evidence to support this lesser included charge.  For all of the foregoing reasons, the

---

[3]Gonzalez also recognized that 21 U.S.C. 841(b)(1) includes a third subsection, (b)(1)(C), which authorizes a lower level of punishment without any showing of quantity.  Id. ("If a defendant is convicted only on a lesser unquantified drug charge, he must be sentenced pursuant to § 841(b)(1)(C), which generally provides no mandatory minimum sentence.")

14

conviction for a lesser quantity than that alleged in the indictment does not provide a ground for overturning or vacating the jury's verdict.

**CONCLUSION**

For the foregoing reasons, the court denies the defendant's motion for acquittal or, in the alternative, a new trial **[Dkt. No. 1519]**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of February, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge